## No. 2755

### Second Circuit

## SHREVEPORT LONG LEAF LBR. CO., INC., v. WHITE AND DYER

(March 12, 1929. Opinion and Decree.)

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Philip H. Mecom, of Shreveport, attorney for defendant, appellant, F. L. Dyer.

Barnett and Roberts, of Shreveport, attorney for defendant, appellant, James L. White.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff, Shreveport Long Leaf Lumber Company, Inc., sued defendants James L. White and F. L. Dyer to recover judgment against them in solido for $1,393.55 with legal interest thereon from March 1, 1924, until paid.

It alleged that they had entered into a business arrangement whereby houses were to be constructed on land belonging to Dyer and the houses and land on which they stood sold and the net profits of the venture divided equally between the defendants; that defendant White had charge of the construction of the houses and purchased from plaintiff for account of the partnership building material amounting in price to $1,693.55; that $300.00 was paid on the debt and that a balance of $1,393.55 was owing and due.

He further alleged that the material so sold was actually used in the construction

of the buildings erected by the defendants in the venture.

Defendant Dyer answered denying that he was indebted to plaintiff in solido with White or otherwise in the sum sued for or any other sum and denied that he and White were partners of any kind or that the material was purchased for his use or benefit or that of any partnership of which he was a member, and alleged that the material was purchased by White solely for his own use and benefit and that plaintiff was aware of it at the time.

Defendant White answered denying that a partnership existed between him and Dyer, and denied that he, in solido with Dyer or otherwise, owed the debt or any part of it, and denied that the material was bought or used for account of himself or any partnership of which he was a member, and alleged that it was both bought and used solely for account of Dyer.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendants jointly for the amount claimed and both defendants appeal.

Plaintiff has answered their appeal and asks that the judgment be amended so as to condemn them both individually and in solido.

## OPINION

Neither defendant disputes that the material was sold and delivered, or that the balance claimed is owing therefor and due, nor does either of them deny that the material was used in the construction of houses by White on land owned by Dyer; but both of them deny liability for the debt and assert that the other alone owes the whole of it.

So that the question before the court for decision is whether either or both of them owe the debt, and if only one of them, which one, or if both, whether they owe it jointly or solidarily.

Defendant J. L. White testified:

"Q. Mr. White, this is a suit brought by the Shreveport Long Leaf Lumber Company against both Fred L. Dyer and yourself in solido for $1,393.55 for lumber and material alleged to have been sold and delivered amounting to that sum, by the Shreveport Long Leaf Lumber Company to the defendants. Have you any knowledge of that transaction?
"A. Yes, sir.
"Q. Just state whether or not you purchased materials and if the amount here is correct?
"A. Yes, sir; I purchased the material in the name of J. L. White, Trustee. I was representing Mr. Dyer to put the material in the houses that he has since sold and received money for.
"Q. You purchased these materials from the plaintiff?
"A. Yes, sir.
"Q. Is this account for $1,393.55 correct?
"A. Yes, sir.
"Q. As to balance due?
"A. Yes, sir.
    * * * * * *
"Q. What did you do with the materials?
"A. It was put in houses that I was building for Mr. Dyer.
"Q. Where were these houses built?
"A. There was one on Caperton street, one on Kingshighway, one on Gilbert street and the balance in Victory Place.
"Q. All in Shreveport?
"A. All in Shreveport.
"Q. Upon whose lots?
"A. Upon Mr. Dyer's lots—F. L. Dyer.
    * * * * * *
"Q. Did he hold legal title to these lots when the buildings were constructed?
"A. Yes, sir.
"Q. Did Mr. Dyer have knowledge of the purchase made by you?
"A. The accounts were all checked and

sent to his office for payment; the invoices were kept in his office after being checked.

"Q. Do you know if he made any payments on the accounts as OK'd and sent there by you?

"A. Yes, sir, he did; when he and I had a final settlement I understood that the Shreveport Long Leaf Lumber Company and the Victoria Lumber Company were paid in full. As I say, these accounts were kept in Mr. Dyer's office and Mr. Miles compiled a list of what was owing, about $25,000.00, and he left these two accounts out of the list.

\* \* \* \* \* \*

"Q. What connection did Mr. Miles have with Mr. Dyer?

"A. He was Mr. Dyer's private secretary, and the only man that I could get to see.

\* \* \* \* \* \*

"Q. Do you know what became of these houses after they were constructed by you?

"A. I don't know, because Mr. Dyer, of course, disposed of them and took the money, I suppose. The only one that I was interested in, Mr. Dyer was to get the first $1,000.00 profit that was made and if there was more than that I was to get the next $1,000.00 profit, and any above that was to be divided. He was to receive the first one thousand dollars—

\* \* \* \* \* \*

"Q. What do you mean by Mr. Dyer being permitted to receive the first $1,000.00 before you participated in the profits?

"A. We were working under a contract in which he was to receive $750.00 and I was to put up one-fourth of the money, and in October I told him I could not do it, and he said: 'All right, I will pay all the bills and all the pay-rolls, but I think I would be entitled to the first $1,000.00' and I agreed to that.

"Q. Do you mean the first $1,000.00 over and above all expenses—costs?

"A. Yes, sir; I was to get nothing whatever.

"Q. That applied to the building of the particular houses in which this material was used?

"A. Yes, sir."

He further testified that after Dyer got $1,000 out of the net profits he was to get $1,000 out of them and that any balance of net profits remaining was to be divided between them.

George L. Lilley testified that he was vice president and treasurer of plaintiff and that before extending the credit he had spoken to Mr. White who informed him that there was a working arrangement between him and Mr. Dyer and that he communicated with Dyer who verified the statement. That after the account became due he went to see Mr. Dyer about it who made excuses for the non-payment and gave assurances of payment, and that later he denied liability.

The testimony of Dyer is in effect a general denial of White and Lilley's testimony, except that he admits that the houses were constructed on land owned by him and contends that White was a contractor in the erection of the houses and should have paid for the material used in their construction and says that he owes him nothing. He admits that he and White had built some houses on a profit sharing basis, under the business name of "J. L. White, Trustee," and that he had paid the bills incurred in that name for material, but says that they were not the houses into which the material plaintiff sold went. He says that Mr. White was not financially responsible and that was why the houses were built under the title of "J. L. White, Trustee." While claiming that the houses into the construction of which plaintiff's material went were constructed by White under contract he does not prove one or any of the facts that usually accompany it, such as registry, making of bond, etc. It seems improbable that if White was in-

solvent, as Dyer says he was, the latter would have contracted with him for the erection of the houses without the usual and customary safeguards.

The District Judge, who heard the testimony and saw the witnesses testify, in effect held that neither of the defendants had established his theory of the business relations that had existed between them and that each of them owed one-half of the debt; and under all of the evidence we are unable to say that he erred.

Plaintiff in its answer to defendants' appeal contends that their business relations constituted them commercial partners and that as such they are liable to it in solido.

Article 2825 of the Civil Code provides: "Commercial partnerships are such as are formed:

"1. For the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture.

"2. For the buying or selling any personal property whatever, as factors or brokers.

"3. For carrying personal property for hire, in ships or other vessels."

We do not think that the enterprise defendants were engaged in was such as to constitute them commercial partners, and they were, therefore liable each for his virile share of the debt owing to plaintiff.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.